Good morning, your honors. Good to see you again. I'm Eric Slepian on behalf of Paula Hubbell. I'm going to attempt to reserve two minutes for a rebuttal. What we have before us is a fairly narrow issue in the Social Security Disability Claim. And that issue is whether the district court should have remanded this matter for an immediate award of benefits as opposed to remanding the matter for further proceedings. It appears the plaintiff's burden in this type of a case would be to show that the district court judge abused her discretion in remanding this matter for further proceedings. The issue that we have is the claimant had a hearing before an administrative law judge who issued a decision. And in that decision it's agreed that the administrative law judge did not provide sufficient reasons for reject claimant's testimony and did not provide sufficient reasons to address her credibility and to address the V.E.'s testimony. The agency asked for a remand. That's correct. Well, that's not what the basis of the remand was for. No, but that's what the remand was. No, the district court order remanding the matter was to further develop vocational issues. Had nothing to do with claimant's credibility and had nothing to do with the opinion of the treating physician. Basically, the district court said, yes, we should accept claimant's testimony as true. And Ms. Hubbell's position is if we accept her testimony as true, then she's disabled. It looks like the remand was somewhat related or basically just related to the step three analysis or the grids. Wasn't it the grids? The court was looking at the grid. That was unnecessary, right? Basically a side issue to protect the record. It can go that way, but it wasn't necessary. Absolutely not necessary. So is there any doubt that if you credit her testimony, that based on the opinions offered by the V.E., that she was disabled for the period of time that's in dispute? No doubt at all. The vocational consultant basically said if we accept her testimony as true, she cannot work. Isn't there some distinction between the vocational expert and her, I mean, the two doctors that testified as to what she could or couldn't do? Well, with respect to the doctors, the district court found and defendant agrees that the treating physician rendered an opinion indicating that the residual functional capacity would not allow for the performance of sustained work. The ALJ did not provide sufficient reasons to reject that opinion. Therefore, under the Moore holding, the treating physician's opinion also should be accepted as true. And again, the vocational consultant testified, if we accept that treating physician's opinion is true, she is conclusively deemed disabled. And there doesn't seem to be any dispute that if we accept either the treating physician's opinion or claimant's testimony, this matter should have been remanded for an award of benefits. The case says we're supposed to accept it as true. And you don't think the vocational expert, having misread the table, or at least testified incorrectly, makes any difference in terms of what we can do or should do? That's correct. Did the vocational expert misread the table, or he just testified on the basis of an adverse credibility finding? No, a vocational consultant generally does not read these tables, and it's an ALJ's obligation to apply these tables. Similarly, a vocational consultant is not supposed to make any credibility assessment, nor to weigh medical evidence. But he was testifying based on a hypothetical that the ALJ posed, which incorporated the ALJ's negative credibility findings. Is that basically what was happening? Well, I don't entirely agree with that statement in that the vocational consultant answered a question of the ALJ, which was premised upon an opinion of a consulting physician. And so if one were to assume the consulting physician's opinion, then we may have to look at that vocational consultant testimony. But as I said, the judge did not provide any reason for disregarding the treating physician opinion, which is entitled to deference. But did the vocational expert also testify on a hypothetical that took into account the treating physician's opinion rather than the consulting? Yes, the vocational consultant was asked that question. So you're saying the answer to that question is the one that ought to govern, so we do have the answer, so there's no need to remand. That's just a short of it. That's absolutely correct. May it please the Court, my name is Deborah Stachel, and I'm here this morning on behalf of Michael Astor, the commissioner of Social Security. The ALJ found Klayment disabled as of November 24, 2003. Klayment sought judicial review of this disability onset date. The commissioner here moved for remand before the district court in order to clarify the record with respect to the time period between May 8, 2002, Klayment's alleged onset date, and November 23, 2003. None of the evidence at issue here, medical, testimonial, or vocational, meets the criteria this court has used in the past when crediting evidence as true. The district court properly exercised its discretion in holding that remand for further factual development was necessary. Because outstanding issues need to be resolved, remand will serve a useful purpose here. Well, the district court remanded for one purpose and one purpose only, and that was to determine whether the plaintiff has transferable skills relevant to sedentary work. No, Your Honor, that's not correct. In excerpts of record, page 280, the district court's remand is to both obtain new vocational expert testimony and evaluate the credibility of plaintiff's subjective complaints. And those were the two bases on which the commissioner moved for remand here. The commissioner did not seek remand with respect to the evaluation of the treating physician opinion as counsel. If you just take her credibility, let's just take that for a moment. So you acknowledge that the ALJ erred on the basis on which he discredited her, correct? The ALJ credited Klayment's testimony from November 24, 2003 forward. But he said prior to that time, he said there was no objective medical evidence to support her pain testimony. Yes, Your Honor. And the agency properly noted before the district court that that was erroneous. That that was not a sufficient basis on which to evaluate her ability. Right. So was there any other reason why you wouldn't credit her testimony? Yes, Your Honor. The testimony at issue was given in July 2004. And the testimony did not distinguish between any of the period at issue here. So again, the issue before this court is only the 18-month period between May 2002 and November 2003. If you look at the medical records in that time period, first of all, there are no medical records between May 2002 and October 2002. Under the Social Security Act, Klayment may not meet the disability requirements without subjective pain test evidence tied directly to medical evidence. And secondly, if you look at the medical evidence from October 2002 forward for the next year to November 2003, the medical evidence changes. It's not a consistent level of pain or of conditions even that are found in the medical record. Well, actually, Your Honor, that's unclear. The treating physician here gave two different functional opinions in March of 2003 and in July of 2003. In the July 2003, he found her capable of doing more than in March 2003. If you understand that the burden here that you need is a firm conviction of clear error, you think those changes in that 18-month period create that clear error so that we should remand it rather than pay the woman? Do you know how long it takes now if we were to keep this case before it went back to the ALJ and then went to the Appeals Bureau and then probably came back here? How long it would be before this lady saw any money of this period of time? About? About how long? You say three years was a good guess? No, I don't agree with that statement, Your Honor. And again, she is on current benefits. I only asked you two questions at once. I'm sorry. Just to answer my last question, which is what the timetable would likely be. Not that it's determinative for us, but it's just interesting to me. Well, yesterday I checked Clayman's record on our database system, and it shows that a hearing has been, would have happened in 2007, but for these additional court proceedings. So the agency is ready to go on this case, but it lacked jurisdiction to proceed because of the exercise of the right to seek additional judicial review. So we're blaming it on the petitioner? I don't think there's blame one way or the other for the proper exercise of rights. It was a simple question of what the timetable is between registering a claim like this in the district office and getting a decision from us. That's a rule, general rule. I couldn't speculate on that. And what would you guess they do during that period? Does anybody get any money? Clayman here is receiving money, Your Honor. She's on monthly benefits. Right. And indeed, if the whole case was up for us, she wouldn't be getting any money at all three years later. We don't know that for sure, Your Honor, because even a claimant who's denied has a right to apply again and could be awarded on the next application if the medical condition has changed. My view is, for what it's worth, is that it's far too long and you ought to go back and tell your commissioner, I think so. The commissioner is well aware of that, Your Honor, and he has been speaking directly with Congress about that to receive additional funding for all of our offices so that we can improve those timelines. I just have one comment left on the credibility issue, and that it just appears that, you know, with the concession that the ALJ aired in discrediting her, the basis on which she discredited her, it looks like it's just a remand. All you want is a remand for a redo so you can find another reason to discredit her. Well, no, the commissioner shares this Court's interest in ensuring that someone who is eligible and qualified for benefits receives them. The issue here is, does the record fully support it? And, again, there's no medical records for the time period between May 2002 and October 2002. And here... The ALJ is going to discredit the claimant's testimony. It has to give specific and clear reasons for discrediting her testimony. And here he gave one, and it just doesn't cut it. Even the agency recognizes that. The reason that the ALJ's rationale was not sufficient is because objective medical evidence alone is not a sufficient basis to discredit pain testimony. Yes. I'm now confused, because you said a moment ago that there's no medical evidence for that period. And now you're saying that, which appears to be the case, that there was. And because there was medical evidence, that's why the ALJ was not right to discredit her. So which one is it? Perhaps I misspoke, Your Honor. The ALJ gave us the sole reason for rejecting claimant's credibility for the period at issue that it was not supported by objective medical evidence. And you recognize that it was. So there was relevant objective medical evidence. There is no medical evidence between May and October 2002, not in this record. And so one of the things that could happen on the ALJ found claimant disabled based on a combination of mental and physical impairments. The ALJ developed the record, sent claimant out for a hearing with a psychologist, and then on the basis of the psychological report in June 2002, found that the combination of the mental and physical together rendered her disabled. And that's also where we get into the vocational issue of transferability of skills. But what the ALJ did here is he extrapolated back from that June 2004 psychological report and said, well, that condition must have been in existence six to seven months earlier, and he came up with this November 23, 2003 date. It's unclear from the record how the ALJ reached that date. The claimant never received any psychological treatment in terms of counseling or anything. Her treating physician began prescribing her medication that is also used for mental health symptoms, in September of 2003, but from the treatment notes those seem to have been prescribed on the basis of her pain complaints. There's no indication that there was any mental assessment or anything done like that. So, again, the record here is somewhat muddled as for the period between May 2002 and November 2003, such that we can't really assess does she meet the statutory requirements for disability. The way you frame the argument right here in court, it really isn't reflected in the motion that you filed with the district court. Or in the way you argued the case to us. Let me ask you another question. The whole business about the grids, that's just kind of a side issue, correct? I believe that you're referring to the issue of the transferability of skills here. Well, I don't believe that is a side issue here, Your Honor, because it goes to whether the commissioner meets the burden at Step 5 of the sequential evaluation. The vocational testimony was unclear here because of the use of the term cashier and how that is used in the Dictionary of Occupational Titles. It's used in two different ways. It's used as a general occupational category, under which I counted close to about 50 separate occupations fall under that. And then it's also used as a specific occupational title for certain types of jobs with certain characteristics. So here the vocational expert mentioned the category, well, it's unclear, mentioned the word cashier and then referred to bank tellers and other types of positions. And again, within the Dictionary of Occupational Titles, those do fall under the broad range of categories of cashier occupations. But what's unclear here is whether the vocational expert was testifying as to particular occupations under that. And under this Court's 2007 case, Misace, the ALJ was required to clarify what the vocational expert's testimony was. Was it consistent with the Dictionary of Occupational Titles? And if there was a difference, to resolve that difference in the decision. And none of that happened here. Does that matter if the claimant is fully credited? If you credit her testimony that she cannot stand, sit or walk for more than ten minutes at a time, then no, it probably doesn't matter. The district court opinion is a little confusing because it seems not to agree with you, as I read it, with regard to whether there was anything left of the credibility determination, i.e., it says on page 279 that medical evidence justifies the conclusion and then goes to the consulting physician. It was therefore error for the ALJ to discredit plaintiff's plaintiff's suffering testimony based on the lack of objective medical evidence, i.e., there was objective medical evidence. Now, you're now saying there wasn't objective medical evidence for the relevant time period. Then the ALJ, the district court goes on and says there's one issue, and then you're right, when she remands, she remands on credibility, which I don't understand because the whole thrust of the rest of the opinion is that there was no issue left about credibility. So I'm confused about why it was set up that way. But first of all, didn't the district court conclude with regard to the objective medical evidence that there was objective medical evidence for that time period? I don't believe the district court specifically addressed that five-month period that I've been referring to here between May and October 2002. What was the time period after that? Why is that? So you're suggesting that there's no evidence for that five months, but there is after that, so therefore she might be – she might be – that doesn't seem to be useful for credibility purposes, though, because overall what you're trying to figure out is if she's credible. And if over this time period there is evidence which is consistent with her complaints, that indicates that she's credible. You then credit her. Her testimony covers the whole time period, right? Can you chop it up that much for credibility purposes into little subgroups? I mean, if she didn't go to the doctor in a certain month, then therefore she can be not credible for that month but credible for the next month? The question here is – the broader question here is whether she meets the criteria for disability under the Social Security Act. But for a larger than a five-month period. We're talking about a year-and-a-half long period, right? Yes, Your Honor. So there's no medical evidence in this record between 1999 and October 2002. She worked through to May 2002 and then alleges that's when her disability began. But as of – but she was discredited for a period that you agree there was evidence for, from October 2002 to November 2003? Yes. All right. So you're suggesting now that we could chop this up further and say, but he could still find her not credible from May to October? No, Your Honor. I'm saying that we need to look at this record to see whether she meets the requirements under the Act that the pain complaints be tied to some objective medical evidence. And I'm referring now to Section 223. You're agreeing that they were from October 2002 to November 2003? I'm saying that there was some medical evidence in that time period, yes. Therefore, you're suggesting that you could come to a different conclusion about her credibility from May to October? I'm saying that perhaps the evidence does not allow us to conclude that plaintiff carried her burden for that time period. So what you're saying is that – She didn't have any question, right, but that there's nothing in the record that suggests that the Petitioner was incredible in her testimony at any juncture, right? The ALJ found her partially credible. Yeah. But in terms of the testimony, nobody there seemed – and the ALJ didn't put on the record anything that he did in his decision, say what you're telling me. But basically, as I understand it, there's nothing in this record that suggests anything but a credible witness on Hubbell's part. Is that your view? Well, let's assume it is. If that's so, on this record, are you still suggesting that it has to go back so we can find out if she was credible in part? So you're asking me to assume a position my agency has not taken, if I understand you correctly. If the court deems her credible and credits that testimony – She gets benefits, right? I believe so, because it would then go to the next level of determining what her residual functional capacity would be. And if she's deemed credible that she cannot sit, stand or walk for more than 10 minutes at a time, something different than what her doctor said, then she would be deemed credible. Okay. Thank you. Thank you. I appreciate your argument. I believe you had a minute or two for rebuttal. Longer, I guess. Okay. I don't think I have anything in rebuttal. But if there are any questions the panel would like to ask me, I'm available. Okay. Thank you.  The matter is submitted. Thank you. Our next case for argument is James Singh v. City of Oakland.
judges: Paez, Berzon, Baer